# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:13CR106 |
| vs. | |
| RUSSELL GLENN PIERCE, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the court on the defendant's, Russell Glenn Pierce, Motion to Suppress Statements (Filing No. 164). The defendant is charged in the Second Superseding Indictment with the receipt and attempted receipt of child pornography (Count I) in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) and the accessing of a computer in interstate commerce with the intent to view child pornography (Count II) in violation of 18 U.S.C. § 2252A(a)(5)(B) during the period of November 16, 2012, and December 2, 2012 (Filing No. 88).[1] The defendant seeks to suppress statements he made to law enforcement officers in an interview during the execution of a search warrant at the defendant's residence at 4115 Hayes Street in Hollywood, Florida, on April 8, 2013, together with any subsequent statements which were tainted by this interview.

The court held an evidentiary hearing on the motion on October 7, 2014. The defendant was present with his counsel Joshua D. Rydell. The United States was represented by Assistant U.S. Attorney Michael P. Norris. The court heard the testimony of Federal Bureau of Investigation (FBI) Special Agent Catherine Koontz (Agent Koontz). The court also received into evidence an Advice of Rights Form (Ex. 1) and a recording of the April 8, 2013, interview (Ex. 2). A transcript (TR.) of the hearing was prepared and filed on October 13, 2014. **See** Filing No. 240.

---

[1] Trial on the charges against the defendant were severed from the other defendants in the Second Superseding Indictment on December 12, 2013 (Filing No. 136). The defendant's motion to suppress the NIT warrant was consolidated with the other co-defendants in the Second Superseding Indictment as well as two other similar cases. The defendant's objection (Filing No. 222) to the undersigned judge's recommendation for denial of the motion to suppress the NIT warrant (Filing No. 203) was denied by the court (Filing No. 241).

## FINDINGS OF FACT

On April 8, 2013, at 8:45 p.m., Agent Koontz and other law enforcement officers executed a search warrant at 4115 Hayes Street in Hollywood, Florida, as part of an investigation into child pornography (TR. 5-6).  Agent Koontz received information an individual residing at that particular address was receiving, accessing, or distributing child pornography (TR. 6).  Agent Koontz also had a John Doe arrest warrant for the individual at the residence using a specific IP address to access the TOR network and receive, access, or distribute child pornography (TR. 7, 22-23).  Prior to executing the warrant, Agent Lisa Lamey (Agent Lamey) conducted surveillance of the home and put an operational plan together to execute the search warrant (TR. 25).  The agents discussed who would potentially be in the home, including the defendant (TR. 25-26).  Agent Koontz did not do any investigation before executing the warrant (TR. 25).

When the agents executed the search warrant, they initially removed the occupants from the home, with the exception of one bedridden individual, and then reentered to search the home (TR. 7-8).  The occupants included the defendant, a caretaker, and an elderly couple (TR. 8).  Agent Koontz advised the occupants that the agents had a search warrant for the home as part of a child pornography investigation and then turned her focus to the defendant (TR. 9, 36, 44).  Agents Koontz and Lamey focused on the defendant because he was the youngest and most likely person to have accessed the TOR network (TR. 9, 36).  Agent Koontz doubted the elderly couple or the caretaker were accessing the TOR network (TR. 9).

After Agent Koontz made contact with the defendant, who at that time was on the porch with Hollywood police officers assisting with the search warrant execution, she asked whether he would be willing to accompany Agents Koontz and Lamey into the home to talk (TR. 10).  Agent Koontz did not remember whether the defendant was handcuffed (TR. 27-28).  While on the porch, Agent Koontz advised the defendant he was not under arrest, he was under no obligation to speak with the agents, and he did not have to stay (TR. 9-10).  After agreeing to speak with the agents, the defendant and the agents entered the home and went to a back bedroom (TR. 11, 30).  Agent Koontz brought three chairs into the bedroom and closed the bedroom door for privacy (TR. 11-12, 30).  The three chairs were in a line with Agent Koontz, as the lead interviewer, in

the middle with the defendant to her left and Agent Lamey to the right (TR. 11-12). Agents Koontz and Lamey were the only agents in the bedroom with the defendant (TR. 41-42). There were approximately seven other individuals in the home executing the search warrant (TR. 41-42).

Prior to the interview, Agent Koontz used an advice of rights form to advise the defendant of his rights (TR. 12, 33; Ex. 1). Agent Koontz read each right to the defendant, asked if he understood his rights, and asked if he was willing to waive those rights and speak with the agents without a lawyer present (TR. 12-14, 33). The defendant said he was willing to speak with the agents and signed the advice of rights form (TR. 14, 34-35, Ex. 1). Although Agent Koontz recorded the interview, due to an oversight she did not record the advisement of *Miranda* rights (TR. 12-13, 33-35). Agent Koontz explained the oversight occurred because FBI policy did not permit her to record interviews; however, she recorded the interview with the defendant at the Department of Justice's request (TR. 12-13, 33-35).

Agent Koontz testified the defendant's demeanor on the porch and in the bedroom was very cooperative, he appeared to understand her questions, and his answers were responsive throughout the questioning (TR. 15-17). The defendant did not make any complaint to the agents about any illnesses and Agent Koontz did not detect the scent of alcohol from the defendant (TR. 15-16). Agent Koontz testified she had no reason through the course of the interview to question the defendant's ability to waive his rights (TR. 16-17). Agent Koontz testified the recording of the interview is a true and accurate depiction of everything that occurred during the interview (TR. 17). The interview lasted approximately 68 to 70 minutes (TR. 17). Agent Koontz testified she did not use any deceptive tactics in order to elicit the defendant's answers and honestly answered the defendant's questions (TR. 17-18).

At some point during the agents' contact with the defendant, he sought permission to go to the bathroom (TR. 19-22, 36-37). Agent Koontz said he could go, but a male agent would go with him and stand outside the door while the defendant used the bathroom (TR. 19-20). The escort was for officer safety (TR. 20). An agent eventually escorted the defendant to the bathroom (TR. 37). Agent Koontz agreed the defendant did not have unrestricted movement around the home (TR. 42). Agent

Koontz testified up until the point she established the defendant was the individual accessing the TOR network with the IP address, the defendant was free to leave (TR. 20).

In the middle of the interview, the defendant asked whether he was under arrest (TR. 39). Agent Koontz informed the defendant he was a suspect of a John Doe arrest warrant but he was not under arrest because he denied any involvement with child pornography and the agents had not yet connected the defendant, the IP address, and the TOR network (TR. 39-40).

After Agent Koontz finished questioning the defendant, she stopped the recording and waited in the bedroom with the defendant while the other agents finished searching the home (TR. 22). The defendant continued talking about the "Onion Router" and stated he was able to find a route to child pornography (TR. 22). At that time, Agent Koontz knew the defendant accessed the TOR network and he was no longer free to leave, although he was not yet under arrest (TR. 22). Thereafter, Agent Koontz called an Assistant United States Attorney, confirmed there was enough information to execute the John Doe arrest warrant, and arrested the defendant (TR. 22-23, 42).

The defendant testified that on April 8, 2013, he heard a hard knock on the door of his residence and after he answered the door, he was pulled outside, handcuffed, and placed in a chair on the front porch (TR. 48, 54). After fifteen to twenty minutes, the defendant was unhandcuffed and led to a back bedroom (TR. 49). The defendant testified he did not feel free to leave and he felt uncomfortable, but he was not threatened by the agents and the agents did not force him to speak (TR. 49, 56-57). The defendant testified he did not know why the agents were at the home and he did not remember being read his rights before the interview (TR. 49). The defendant admitted the signature on the advice of rights form looks like his signature, but the form was not presented until the end of the interview (TR. 52-53, Ex. 1). The defendant agreed the interview with Agent Koontz was conversational and voices were not raised (TR. 53-54). The defendant testified he had not been drinking on April 8, 2013, and he never told the agents he took any medication although he took a Xanax before going to bed and other medication for a diffused spine (TR. 59-60).

At the conclusion of the hearing, the court found and credited Agent Koontz's testimony the defendant was advised of his *Miranda* rights prior to the interview (TR. 74).  The court also found the defendant's statements were voluntary (TR. 75).

## ANALYSIS

The defendant argues the court should suppress his statements made during the April 8, 2013, interview because he was subjected to a custodial interrogation without being advised of his *Miranda* rights.  **See** Filing No. 165 - Brief; TR. 62-69, 71-73.

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda* rights before questioning if that individual is in custody.  *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014).  "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Williams*, 760 F.3d at 814 (internal quotation marks omitted).  Whether an individual was in custody is an objective inquiry and a court considers the totality of the circumstances that confronted the individual.  **See** *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011); *Williams*, 760 F.3d at 814.

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. . . . [T]he court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*J.D.B.*, 131 S. Ct. at 2402  (**quoting** *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)); **see also** *United States v. Diaz*, 736 F.3d 1143, 1148 (8th Cir. 2013).  The Eighth Circuit has identified the following six non-exclusive factors to consider when determining whether an individual is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect

> initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Diaz*, 736 F.3d at 1148-49 (**quoting** *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Lowen*, 647 F.3d 863, 867 (8th Cir. 2011) (**quoting** *United States v. Czichrary*, 378 F.3d 822, 827-28 (8th Cir. 2004); **see also** *United States v. Perrin*, 659 F.3d 718, 720 (8th Cir. 2011) ("*Griffin* is simply a rubric for considering the ultimate issue, not a mandatory checklist."). From this principal it follows that the presence or absence of any one factor is not determinative on the issue. **See** *Griffin*, 922 F.2d at 1347. Instead, a court must "examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Id.* (**quoting** *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). "The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Williams*, 760 F.3d at 814-15 (**quoting** *Griffin*, 922 F.2d at 1349).

"When a person is questioned on his own turf, we have observed repeatedly that the surroundings are not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation." *Czichray*, 378 F.3d 826 (internal citation and quotation marks omitted). In a suspect's own home, the suspect "may be confident, indignant, or recalcitrant, . . . more keenly aware of his rights and more reluctant to tell of his indiscretions and criminal behavior within the walls of his home." *Williams*, 760 F.3d at 815 (**quoting** *Miranda*, 384 U.S. at 449-50); **see also** *United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) ("When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial."). It is important to note, "[a]ny warrant search is inherently police dominated;

there is nothing untoward about that circumstance." *Perrin*, 659 F.3d at 721.  If a defendant was not in custody, then the protections of *Miranda* do not apply.  *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003) (stating that a defendant who "was not subject to custodial interrogation . . . was not entitled to the protections of *Miranda*").  If an individual was in custody, then the court must determine whether the individual was subjected to interrogation.

"Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) (internal quotation marks omitted).

> Interrogation occurs when a law enforcement officer engages in either express questioning or its functional equivalent, which includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*United States v. Hernandez-Mendoza*, 600 F.3d 971, 976-77 (8th Cir. 2010) (**citing** *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)); **see also** *Crisolis-Gonzalez*, 742 F.3d at 836.  "[S]tatements made by a custodial suspect in response to interrogation are inadmissible unless the suspect has voluntarily, knowingly, and intelligently waived his right against self incrimination." *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009).  However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966); **see also** *Crisolis-Gonzalez*, 742 F.3d at 837 ("Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.").

In order for evidence obtained as a result of custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires an individual to both be advised of his constitutional rights by law enforcement and to make a valid waiver of those rights.  **See** *Miranda*, 384 U.S. at 444.  "The mere fact that an investigation has focused on a particular suspect does not trigger the need for *Miranda* warnings in noncustodial settings." *United States v. Goudreau*, 854 F.2d 1097, 1098 (8th Cir. 1988) (**citing** *Minnesota v. Murphy*, 465 U.S. 420, 431 (1984)).  Before questioning

7

begins, a suspect in custody must be informed of the following: (1) he has the right to remain silent; (2) his statements may be used against him in a court of law; (3) he has the right to an attorney; and (4) if he cannot afford an attorney, one will be appointed. *Miranda*, 384 U.S. at 444, 469-70, 478-79. The purpose of the warning is to ensure that the suspect is "aware of the privilege against self-incrimination, under[stands] the consequences of waiving this privilege, and recognize[s] the adversarial nature of the proceedings." *United States v. Johnson*, 47 F.3d 272, 277 (8th Cir. 1995). "Neither the Miranda decision nor its progeny require the police to ask a suspect explicitly whether [the suspect] understands his rights." *United States v. Mayhew*, 380 F. Supp. 2d 915, 921 (S.D. Ohio 2005) (failing to explicitly question if the defendant understood did not "vitiate the legality of defendant's waiver").

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). When determining whether a waiver was made voluntarily, knowingly, and intelligently, the court follows a two-step process:

> First, the waiver must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the suspect must have waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted). A court "consider[s] the totality of the circumstances in determining whether a suspect's waiver is valid." *United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012). "The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

After considering the totality of the circumstances, the court finds the defendant was not in custody during the April 8, 2013, interview. Agent Koontz specifically informed the defendant he was not under arrest, he was under no obligation to speak with the agents, and he did not have to stay. **See** TR. 9-10. The defendant voluntarily acquiesced to speak with Agents Koontz and Lamey. **See** TR. 11, 30. Before the interview started, Agent Koontz read the defendant his *Miranda* rights, which the defendant voluntarily waived as discussed below. **See** TR. 12-14, 34-35; Ex. 1.

Additionally, during the interview Agent Koontz reiterated the defendant was not under arrest.  **See** TR. 39-40; Ex. 2 at 21:28.  While the defendant did not have unrestricted movement around the home, the interview occurred on his "own turf" in conversational tones, the defendant was not handcuffed during the interview, and he was not in a police dominated atmosphere.  **See *Axsom***, 289 F.3d at 502-03 (finding there was not a police dominated atmosphere when two agents conducted questioning while seven agents searched a small house).  Further, neither Agents Koontz nor Lamey employed strong-arm tactics or deceptive stratagems during the interview.  Agent Koontz identified the defendant as the one most likely to have accessed the TOR network, however Agent Koontz's focus on the defendant did not make the interview custodial.  **See *United States v. Rorex***, 737 F.2d 753, 755 (8th Cir. 1984) ("The fact that an investigation may be said to have focused on a particular person does not necessarily make questioning custodial.").  Although Agent Koontz arrested the defendant after the interview, Agent Koontz made the determination to arrest him only after the defendant admitted to accessing the "Onion Router" and Agent Koontz confirmed with an Assistant United States Attorney that the defendant should be arrested.  **See *United States v. Huether***, 673 F.3d 789, 795 (8th Cir. 2012) (finding the defendant was not in custody even though he was arrested at the end of questioning).  Therefore, a "reasonable person" in the defendant's position would have felt free to leave the room prior to or during the interview.

Even assuming the defendant was in custody and interrogated, he was advised of his ***Miranda*** rights prior to the interrogation.  As the court indicated during the suppression hearing, the court finds Agent Koontz properly advised the defendant of his ***Miranda*** rights prior to the interview and discredits the defendant's testimony he was not so advised.  **See** TR. 74.  Agent Koontz read each right to the defendant, asked if he understood his rights, and asked if he was willing to waive those rights and speak with the agents without a lawyer present.  **See** TR. 12-14, 33.  The defendant said he was willing to speak with the agents and signed the advice of rights form.  **See** TR. 14, 34-35, Ex. 1.  The evidence shows the defendant's waiver was voluntarily, knowingly, and intelligently made.  The defendant was not under the influence of alcohol and although he had taken prescribed medication, there is no evidence that affected his

ability to waive his *Miranda* rights. Agents Koontz and Lamey did not employ any deceptive tactics or threats to obtain the defendant's waiver. Therefore, assuming the defendant was subjected to a custodial interrogation, he was advised of his *Miranda* rights and there are no grounds for suppression.

To the extent the defendant challenges the voluntariness of his statements, the court finds his statements were voluntary. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Perry*, 714 F.3d 570, 574 (8th Cir. 2013) (**quoting** *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" *United States v. Vega*, 676 F.3d 708, 718 (8th Cir. 2012) (**quoting** *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011)). Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Wallace*, 713 F.3d 422, 426 (8th Cir. 2013) (**quoting** *Vega*, 676 F.3d at 718). It is the government's burden to "prove by a preponderance of the evidence that the challenged statements were voluntary." *Boslau*, 632 F.3d at 429 (**quoting** *LeBrun*, 363 F.3d at 724). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Williams*, 760 F.3d at 816 (**quoting** *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)); **see also** *Vinton*, 631 F.3d at 482 ("A statement is not considered involuntary unless the police extorted it from the accused by means of coercive activity.").

There is no evidence Agents Koontz and Lamey made any threats or promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. While the interview lasted approximately seventy minutes, the interview occurred at the defendant's residence and was conducted in conversational tones, which is corroborated by the court's review of the recording. Agent Koontz testified she did not coerce the defendant's statements and the defendant agreed the agents did not

force him to speak. The totality of the circumstances indicate the defendant's statements were voluntary. Upon consideration,

**IT IS RECOMMENDED TO SENIOR DISTRICT JUDGE JOSEPH F. BATAILLON** that the defendant's Motion to Suppress Statements (Filing No. 164) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 23rd day of October, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge